IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

BONNA D. MULLALY,                )
                                 )
     Plaintiff,                  )
                                 )
     v.                          )     1:04CV00092
                                 )
INSURANCE SERVICES OFFICE,       )
INC.,                            )
                                 )
     Defendant.                  )

MEMORANDUM OPINION and ORDER

OSTEEN, District Judge

Plaintiff Bonna D. Mullaly, a resident of North Carolina, brought suit in the Superior Court of the State of North Carolina, Forsyth County, against her former employer, Defendant Insurance Services Office, Inc. ("ISO"), a Delaware corporation with its principal place of business in Jersey City, New Jersey. Therein, Plaintiff alleged a single claim for severance pay under the North Carolina Wage and Hour Act (the "Wage and Hour Act"), N.C. Gen. Stat. §§ 95-25.1 et seq. Defendant removed the suit to this court under federal question and diversity jurisdiction. This matter is now before the court on Plaintiff's Motion for Remand and Defendant's Motion to Dismiss or, in the Alternative, to Make More Definite and Certain. For the reasons set forth herein, Plaintiff's motion will be denied; Defendant's motion will be granted in part and denied in part.

**I.   BACKGROUND**[1]

Plaintiff Mullaly began working for Defendant ISO, an insurance company doing business in North Carolina, on July 8, 1993. Plaintiff performed duties including inspections, valuations, and ratings of commercial buildings. Her work office was based out of her home in Kernersville, North Carolina.

On March 31, 2003, while working remotely in High Point, North Carolina, Plaintiff was injured in a car accident. She submitted a claim for workers' compensation which was accepted and is being compensated under the North Carolina Workers' Compensation Act. Following her accident, Plaintiff's doctor cleared her to work for only four hours per day. Defendant, however, determined that Plaintiff's position did not fit such restrictions and did not return her to work.

On September 16, 2003, while Defendant had still not returned Plaintiff to work, Lydia Winzler, an employee in Defendant's Human Resources and Employee Benefits Department,

---

[1] On a motion to dismiss, the pleading at issue must be "liberally construed" in the light most favorable to the non-moving party and allegations made therein taken as true. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 2513 (1986); Randall v. United States, 30 F.3d 518, 522 (4th Cir. 1994). On a motion to remand, because the burden is upon the party opposing remand to establish such facts as will prove jurisdiction, the facts are to be stated in the light most favorable to the party seeking remand. Booth v. Furlough, Inc., 995 F. Supp. 629, 630 n.1 (E.D. Va. 1998). Because Plaintiff is the non-moving party on the motion to dismiss and also seeking remand, the facts are stated in the light most favorable to her.

2

issued a Consolidated Omnibus Budget Reconciliation Act ("COBRA") enrollment form on Plaintiff's behalf. The form stated that Plaintiff would be terminated on October 29, 2003. Also on September 16, Winzler sent a letter to Plaintiff stating Plaintiff had 60 days from the date of termination to take COBRA continuation health coverage. On October 29, 2003, Plaintiff's salary benefits from Defendant ended and she received pay for her unused vacation time.

During the time of Plaintiff's employment and effective at the time of her termination, Defendant maintained employment policies in an employee handbook. Section 3.7 of the handbook is entitled "Separation Allowance Plan" and states that the Separation Allowance Plan ("SAP") provides a severance payment to any full-time employee whose employment is terminated by Defendant. (Compl. ¶ 12; Pl.'s Mem. Law Opp'n Mot. Dismiss or, in the Alternative, to Make More Definite and Certain Ex. 1.) Under the SAP, payment would not be made under the following circumstances: (1) if an employee terminates voluntarily; (2) if the discharge was provoked by such activities as "willful unsatisfactory performance, offensive behavior, or violations of ISO policy or rules"; (3) if an employee is discharged prior to six months of employment; or (4) if an employee is temporarily laid off. (Id.) The amount of payment under the SAP is based on the length of an employee's service and weekly pay. For

3

instance, an employee with two or more years of service would receive one week's pay per year of service to a maximum of 26 weeks. (Id.)  The SAP also includes a provision for unused vacation time to be paid to terminated employees based upon the time of year in which the termination occurs. (Id.)  The SAP is maintained separately from Defendant's retirement plan. (Pl.'s Mem. Law Opp'n Mot. Dismiss or, in the Alternative, to Make More Definite and Certain Ex. 2.)

On November 3, 2003, Plaintiff's attorney wrote a demand letter to Defendant requesting payment under the SAP based upon Plaintiff's 10 years of service.  On December 3, 2003, Defendant responded to the demand letter denying payment under the SAP because it did not consider Plaintiff "terminated" inasmuch as she was still receiving Long Term Disability through Defendant for her injuries.  However, Defendant's response letter also stated that in order for Plaintiff to work for Defendant again, she would have to reapply for any position for which she was qualified and, depending on her qualifications, would go to the front of a waiting list if no such positions were then available. Furthermore, Plaintiff's 401(k) Savings and Employee Stock Ownership Plan with Defendant listed her employee status as "terminated."

4

## II. PROCEDURAL POSTURE

Plaintiff brought suit in the Superior Court of the State of North Carolina, Forsyth County, alleging a single claim under the Wage and Hour Act. Defendant removed the suit to this court on two grounds. First, it alleged there is diversity of citizenship and that the amount in controversy has been met. Second, it alleged that the SAP is an "employee welfare benefit plan" as defined by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 et seq., and that Plaintiff's state law claim is preempted.

Defendant filed a motion to dismiss Plaintiff's complaint or, in the alternative, to make it more definite and certain. Defendant argues for dismissal on the ground that Mullaly's state law claim is preempted by ERISA and further moves to strike any claims for relief, including the demand for a jury trial, which are precluded by ERISA. Alternatively to dismissal, Defendant requests the complaint be amended to properly plead an ERISA claim and appropriate statutory relief. Before responding to Defendant's motion, Plaintiff filed a motion to remand to the state court. Therein, Plaintiff argues there are no grounds for federal jurisdiction because the state law claim is not preempted by ERISA and the amount in controversy does not satisfy the requirements of 28 U.S.C. § 1332. Both motions are fully briefed and pending before the court.

**III. ANALYSIS**

Remand to state court following removal is governed by 28 U.S.C. § 1447, which has been held to be "clear and unambiguous." Roach v. West Virginia Reg'l Jail and Corr. Facility Auth., 74 F.3d 46, 48 (4th Cir. 1996). That statute provides, in pertinent part, "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case <u>shall</u> be remanded." 28 U.S.C. § 1447(c) (emphasis added). The plain language of the statute gives "no discretion to dismiss rather than remand an action" removed from state court over which the court lacks subject matter jurisdiction. International Primate Prot. League v. Administrators of Tulane Educ. Fund, 500 U.S. 72, 89, 111 S. Ct. 1700, 1710 (1991), <u>superseded on other grounds</u>, Federal Courts Improvement Act of 1996, Pub. L. No. 104-317, 110 Stat. 3847, 3850 (internal quotations omitted). Because both dismissal and remand have been raised, the court must first determine whether it has subject matter jurisdiction.

**A. Plaintiff's Motion to Remand**

Defendant premises subject matter jurisdiction on federal question and diversity grounds. The court must decide which, if either exists, and will begin by addressing federal question jurisdiction.

Defendant alleges in its notice of removal that federal question jurisdiction exists because the SAP is an employee welfare benefit plan as defined by ERISA.  As such, Defendant contends Plaintiff's Wage and Hour Act claim is preempted, thereby creating federal question jurisdiction.  Plaintiff argues in her motion for remand that the SAP does not fall within ERISA, resulting in no preemption and no federal question jurisdiction.

ERISA applies to any employee welfare benefit plan if it is established or maintained by any employer engaged in or affecting commerce.  29 U.S.C. § 1003.  An "employee welfare benefit plan" is a plan, fund, or program that provides "participants or their beneficiaries, through the purchase of insurance or otherwise" with, inter alia, "benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits."  Id. § 1002(1).  However, because this statutory definition provides little assistance in determining whether such a plan exists, case law controls the issue.  See Belanger v. Wyman-Gordon Co., 71 F.3d 451, 454 (1st Cir. 1995) ("The text of ERISA itself affords scant guidance as to what constitutes a covered 'plan.'").

The Supreme Court has given its guidance on how to determine whether severance benefits, like those at issue here, are governed by ERISA.  In Fort Halifax Packing Co. v. Coyne, the Court stated that whether the payment of benefits constitutes an ERISA plan depends on whether payment of the benefits at issue

7

"requires an ongoing administrative program to meet the employer's obligation." 482 U.S. 1, 11, 107 S. Ct. 2211, 2217 (1987). The ongoing administrative program need only be minimal to constitute an ERISA plan. District of Columbia v. Greater Wash. Bd. of Trade, 506 U.S. 125, 130 n.2, 113 S. Ct. 580, 584 n.2 (1992). Thus, while a multi employer fund created to provide vacation benefits for union members who typically work for several employers during the course of a year undoubtedly falls within the scope of ERISA, see Franchise Tax Bd. of State of Cal. v. Construction Laborers Vacation Trust for S. Cal., 463 U.S. 1, 4-5, n.2, 103 S. Ct. 2841, 2843-44, n.2 (1983), a company policy of paying its discharged employees for their unused vacation time does not. See Massachusetts v. Morash, 490 U.S. 107, 114, 109 S. Ct. 1668, 1672 (1989). However, because the Fort Halifax test requires a court to appraise each case on its own facts, situations in between require judicial line drawing. See Simas v. Quaker Fabric Corp. of Fall River, 6 F.3d 849, 854 (1st Cir. 1993) ("So long as Fort Halifax prescribes a definition based on the extent and complexity of administrative obligations, line drawing . . . is necessary and close calls will approach the line from both sides.").

The Fourth Circuit has not established a set of factors for determining whether the payment of severance benefits requires an ongoing administrative scheme. As a result, the district courts

8

in this circuit have adopted a variety of factors from other circuits, including (1) the amount of managerial discretion granted in paying the benefits and whether a case-by-case review of employees is needed; (2) whether payments are triggered by a single, unique event in the course of business or on a recurring basis; (3) whether the employer must make a one-time, lump-sum payment or continuous, periodic payments; and (4) whether the employer undertook any long-term obligations with respect to the payments. See, e.g., Emery v. Bay Capital Corp., 354 F. Supp. 2d 589, 594 (D. Md. 2005) (accepting as typical the Eighth Circuit's test from Emmenegger v. Bull Moose Tube Co., 197 F.3d 929, 934 (8th Cir. 1999)); Blair v. Young Phillips Corp., 158 F. Supp. 2d 654, 659, n.3 (M.D.N.C. 2001) (gathering factors from other circuits); Donovan v. Branch Banking & Trust Co., 220 F. Supp. 2d 560, 564-65 (S.D. W. Va. 2002) (compiling factors).

The first factor, that of case-by-case analysis and employer discretion, favors the finding that the SAP is an ERISA plan. Before an employee will be paid severance benefits under the SAP, Defendant must determine, as to each employee, the employee's (1) reason for leaving the company (for cause or no cause, voluntarily or involuntarily); (2) employment status (full-time or part-time); (3) length of service in years; and (4) weekly pay. (Pl.'s Mem. Law Opp'n Mot. Dismiss or, in the Alternative, to Make More Definite and Certain Ex. 1.) While most of these

9

determinations require no managerial discretion, simply mathematical calculations, see, e.g., Tinoco v. Marine Chartering Co., 311 F.3d 617, 622 (5th Cir. 2002) (holding calculating severance benefits based upon age, years of service, and pay required no discretion), courts across the country have held the discretion of determining the cause of termination to be a factor heavily favoring an ERISA plan. See, e.g., Simas, 6 F.3d at 853 ("The 'for cause' determination, in particular, is likely to provoke controversy and call for judgments based on information well beyond the employee's date of hiring and termination."); Blair, 158 F. Supp. 2d at 659-60 (remarking that a "for cause" determination in a severance plan is a considerable factor implicating ERISA); Darlin v. Consolidated Rail Corp., 93 F. Supp. 2d 599, 601 (E.D. Pa. 2000) (finding an ERISA plan where eligibility was restricted to employees who were terminated without cause). Here, the SAP does not define "willful unsatisfactory performance" or "offensive behavior," leaving those terms to be applied by Defendant on a case-by-case basis. Furthermore, an employee will not receive severance under the SAP if she violated ISO policy or rules. As a result, Defendant must consider the type and seriousness of any infraction before it can determine whether severance benefits should be refused. See O'Connor v. Commonwealth Gas Co., 251 F.3d 262, 267 (1st Cir. 2001) ("Where subjective judgments would call upon the integrity

10

of an employer's administration, the fiduciary duty imposed by ERISA is vital."); Kulinski v. Medtronic Bio-Medicus, Inc., 21 F.3d 254, 257 (8th Cir. 1994) ("[A]n employer's need to create an administrative system may arise where the employer, to determine the employees' eligibility for and level of benefits, must analyze each employee's particular circumstances in light of the appropriate criteria.").

The second factor, whether payment of benefits is triggered by a single, unique event or on a recurring basis, also favors the finding of an ERISA plan. Payment of severance benefits under the SAP is not premised upon a single event, such as a plant closing, as was at issue in Fort Halifax. See Fort Halifax, 482 U.S. at 12, 107 S. Ct. at 2218 (holding the payment of benefits at the occurrence of a single event an indicium of lack of an administrative scheme); see also, Delaye v. Agripac, Inc., 39 F.3d 235, 237-38 (9th Cir. 1994) (holding that although the employer had discretion to make a for cause determination, the employment contract between the former president/chief executive officer and the defendant employer did not constitute an ERISA plan because administration of the benefits required only a single discretionary decision). Instead, Defendant's obligations are recurring as employees are terminated, which necessarily requires some ongoing administration. See Ebenstein v. Ericsson Internet Applications, Inc., 263 F. Supp. 2d 636, 642

11

(E.D.N.Y. 2003) ("Notably, the Ericsson agreement applies to all employees and was not drafted for a single event such as a plant closing. As such, the plan can reasonably be interpreted as an ongoing commitment on the part of the Company.").

The remaining factors do not implicate an ERISA plan. Once an employee is determined qualified under the SAP, a single lump-sum payment is made to the employee. See, e.g., Donovan, 220 F. Supp. 2d at 565 (holding the lump-sum payment of a severance benefit to be evidence of lack of an administrative scheme). Furthermore, Defendant has no long-term obligations with respect to payments to a particular employee. See, e.g., Hand v. Church & Dwight Co., 962 F. Supp. 742, 746 (D.S.C. 1997) (finding that the ongoing monitoring of the defendant to insure that "she will not cause nor permit to be filed on her behalf any charge, complaint or action," was evidence of an ongoing administrative scheme).

After applying the Fort Halifax test and the generally accepted factors for its application, the court finds itself in a line-drawing situation, with certain factors favoring an ERISA plan and others favoring the mere payment of benefits. On the one hand, the administrative burden placed on Defendant to pay the severance benefits at issue does not appear to be great, at least no more burdensome than that required for payment of wages or vacation payments. However, there is an important distinction

12

between the latter benefits and severance payments which has been recognized by the Supreme Court: "The distinguishing feature of most of these [ERISA] benefits is that they accumulate over a period of time and are payable only upon the occurrence of a contingency outside of the control of the employee." Morash, 490 U.S. at 115-16, 109 S. Ct. at 1673. This distinction was sufficient for the Court to state that "plans to pay employees severance benefits, which are payable only upon termination of employment, are employee welfare benefit plans within the meaning of [ERISA]." Id. at 116, 109 S. Ct. at 1673. The SAP at issue is such a plan, payable only to employees of Defendant upon termination. Because Defendant has discretion to determine eligibility by defining and applying certain aspects of the plan and because it must do so on a recurring basis, severance payments under the SAP require more than a minimal ongoing administrative program. Accordingly, the SAP is an employee welfare benefit plan as defined by ERISA.

Having found that the SAP is an ERISA plan, it is clear that Plaintiff's claim under the North Carolina Wage and Hour Act is preempted. ERISA's preemption provision declares that it "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). A law "relates to" an employee welfare benefit plan and is preempted under § 1144(a) if, "in the normal sense of the

13

phrase, . . . it has a connection with or reference to such a plan." <u>Metropolitan Life Ins. Co. v. Massachusetts</u>, 471 U.S. 724, 739, 105 S. Ct. 2380, 2389 (1985) (quoting <u>Shaw v. Delta Air Lines, Inc.</u>, 463 U.S. 85, 97, 103 S. Ct. 2890, 2900 (1983)). Under ERISA, "[t]he only relevant state laws, or portions thereof, that survive this preemption provision are those relating to plans that are themselves exempted from ERISA's scope." <u>Alessi v. Raybestos-Manhattan, Inc.</u>, 451 U.S. 504, 523 n.20, 101 S. Ct. 1895, 1906 n.20 (1981). Furthermore, this preemption provision "was intended to displace all state laws that fall within its sphere, even including state laws that are consistent with ERISA's substantive requirements." <u>Metropolitan Life</u>, 471 U.S. at 739, 105 S. Ct. at 2389 (1985). This includes laws that "provide alternative enforcement mechanisms to ERISA's civil enforcement provisions." <u>Darcangelo v. Verizon Communications, Inc.</u>, 292 F.3d 181, 190 (4th Cir. 2002) (citing <u>New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.</u>, 514 U.S. 645, 658-59, 115 S. Ct. 1671, 1678 (1995)).

Under these principles, the Fourth Circuit has held that a plaintiff's claim of wages due him under an employer severance plan brought pursuant to the North Carolina Wage and Hour Act was preempted where the severance plan was an ERISA plan. <u>Holland v. Burlington Indus., Inc.</u>, 772 F.2d 1140, 1147 (4th Cir. 1985),

14

aff'd sub nom, Brooks v. Burlington Indus., Inc., 477 U.S. 901, 106 S. Ct. 3267 (1986).  In Holland, the court held that the Wage and Hour Act "essentially requires employers to pay wages due upon termination of employment.  Insofar as this statute is invoked in pursuit of benefits allegedly due under Burlington's severance pay plan, it 'relates to' an employee benefit plan covered by ERISA."  Id.

In accordance with Holland, because Plaintiff is invoking the Wage and Hour Act to pursue benefits under Defendant's severance plan, which is an employee benefit plan under ERISA, Plaintiff's claim is preempted.  The result is that the court has federal question subject matter jurisdiction.  It need not determine whether diversity of citizenship exists.

**A.   Defendant's Motion to Dismiss**

The court now turns to Defendant's motion to dismiss.  The Fourth Circuit has held that if a state law claim seeks remedies that fall within the civil enforcement provision of ERISA, 29 U.S.C. § 1132(a), federal courts should not dismiss the claim but treat it as a federal ERISA claim.  Singh v. Prudential Health Care Plan, Inc., 335 F.3d 278, 290 (4th Cir. 2003); Darcangelo v. Verizon Communications, Inc., 292 F.3d 181, 195 (4th Cir. 2002) ("What was a state claim for breach of contract becomes a federal claim for the enforcement of contractual rights under [ERISA's civil enforcement provision].").  However, if the state law claim

15

seeks remedies outside the scope of ERISA's civil enforcement provision, the state law claim should be dismissed.  <u>Singh</u>, 335 F.3d at 290.  ERISA's civil enforcement provision provides, in part, that a civil action may be brought by a plan participant or beneficiary to "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  29 U.S.C. § 1132(a)(1)(B).

Plaintiff's Wage and Hour Act claim seeks severance benefits allegedly due her under the SAP.  Plaintiff's requested remedy is the same remedy provided for by ERISA's civil enforcement provision.  As a result, Plaintiff's claim will not be dismissed but will be treated as a claim brought under ERISA, 29 U.S.C. § 1132(a)(1)(B).  However, because Plaintiff's complaint requests relief that is not allowed under ERISA and because the finding that the SAP is an ERISA plan may give rise to claims other than that for benefits, amendment is proper.  Plaintiff shall have 30 days from notice of this decision to amend her complaint.

## IV. CONCLUSION

For the reasons stated herein,

IT IS ORDERED that Plaintiff's Motion to Remand [7] is DENIED.  The severance plan at issue is an employee welfare benefit plan under ERISA and Plaintiff's claim under the North

16

Carolina Wage and Hour Act is preempted. As a result, the court has federal question subject matter jurisdiction.

IT IS FURTHER ORDERED that Defendant's Motion to Dismiss or, in the Alternative, to Make More Definite and Certain [5] is GRANTED in part and DENIED in part. Plaintiff's claim will not be dismissed but will be treated as a claim brought under ERISA. Plaintiff shall file an amended complaint within thirty (30) days from the filing of this memorandum opinion and order.

This the 4th day of August 2005.

/s/ William L. Osteen
United States District Judge